49 So.2d 431 (1950)
LABIT et al.
v.
TERREBONNE PARISH SCHOOL BOARD.
No. 3325.
Court of Appeal of Louisiana, First Circuit.
December 22, 1950.
*432 Hirsch & Greene and Sanders R. Cazedessus, all of Baton Rouge, for appellants.
Hubert A. Lafargue, Thibodaux, Leonard Greenburg, Houma, for appellee.
DORÉ, Judge.
This is a suit for injunction against the Terrebonne Parish School Board. The petition sets out that petitioners are taxpayers in Terrebonne Parish; that the defendant School Board has begun a substantial addition to Bayou Black school, within the Parish, without complying with the law with respect to the letting of contracts for improvements to school buildings, specifically in receiving bids on particular items rather than on the complete job; and that petitioners are thereby suffering irreparable injury. They complain that the School Board is also gathering materials for a Bayou Delage (DuLarge) school project without complying with the requisites of law by advertising for bids; that they fear that the Board will "proceed as it has in the past"; and that this action is illegal and threatens to cause further irreparable injury to plaintiffs.
Plaintiffs pray for a preliminary injunction to restrain the School Board and its officers and agents from purchasing any materials for the proposed addition to the Bayou Delage school for any amount in excess of $1,000.00 and from employing and paying funds to any contractor, sub-contractor, or workmen without first fully complying with the law of Louisiana with regard to the letting of contracts by public corporations. They further pray that the Board be restrained from in any manner violating the law with regard to the letting of contracts by public corporations, and from further prosecuting any work or paying out any funds without first having complied with the provisions of law.
On trial of the rule to show cause why a preliminary injunction should not issue the evidence showed that the School Board had for some time been hiring carpenters and laborers to do school repairs in the parish and to do construction on some school enlargement program; that in this particular instance lumber and materials from abandoned buildings was being used in the additions under construction; that the additional material needed was bought from the lowest bidder after bids were invited by advertisement, but the work was being done by laborors employed by the Board who worked under the supervision of carpenters and maintenance men who were regularly employed by the Board.
*433 On the grounds that public money was saved and the public welfare was being served by the procedure followed by the defendant School Board, and that plaintiffs had not shown any irreparable injury to themselves, the District Court rejected the demands of plaintiffs. After an appeal was taken, the defendant moved to dismiss the appeal on the ground that the work on the Bayou Black and Bayou Delage schools had been completed, thus making the legality of the Board's procedure a moot question. This motion was answered by plaintiffs with an affidavit by O'Neil Labit, one of the plaintiffs, in which he affirmed that on October 30th and 31st an examination was made by him of the Bayou Black school and a third school at Boudreaux Canal, and the examination showed that the schools were not completed. Photographs of the school buildings were presented with the affidavit supposedly bearing out the statement made therein.
In their brief plaintiffs urge that the appeal should not be dismissed; that the question involved is not moot for the reason that the School Board already has another addition under way without having entered into a contract for its construction, and threatens to operate in the future as it has done in the past. And they point out that they prayed originally for a preliminary injunction to restrain the Board "from further prosecuting any work or paying out any funds without first having complied with the provisions of law * * *."
In their petition plaintiffs complained only about defendant's procedure with reference to the Bayou Black and Bayou Delage schools. We do not believe that by a general prayer they can enlarge their complaint and thereby obtain relief against acts to be begun in the future when the petition said nothing about such acts. So, if the work on the Bayou Black and Bayou Delage schools has been completed the question raised by this proceeding has become moot. But rather than remand the case in order to determine if those works are complete, and rather than leave the plaintiffs in a position where they might want to bring another similar action, we consider it advisable to pass on the merits of the case at this time, and will do so.
This action is predicated on two legislative enactments, one known as the Low Bid Statute, Act No. 73 of 1926, as amended, and the other being the General School Law, Act No. 100 of 1922, as amended. Plaintiffs claimed that either or both of these acts would require the defendant School Board to proceed by contract, let to the lowest responsible bidder, on each and every construction or repair job the cost of which exceeded $1,000.00.
The extent and construction of Act No. 73 of 1926 was passed on by our Supreme Court in 1949 in Conley v. City of Shreveport et al., 216 La. 78, 43 So.2d 223, where it was held in substance that the act, being no broader than its title, did not require a governmental body to let every construction job out on contract where the cost exceeded the minimum fixed in the act, but it only established the method for letting of such contracts where it was decided that the work was to be done under contract. In other words, the City of Shreveport, in that instance, was not prevented by Act No. 73 of 1926 from undertaking construction jobs with the work to be done by its own employees.
Likewise, then, the School Board in this case is not so restricted by Act No. 73 of 1926 that it could not lawfully construct its own additions or make its own alterations. Evidence presented at the trial showed that the Board had been doing this for years, and that the chairman and members of the Board felt that by so doing they had effected substantial savings.
The other act which plaintiffs claim was being violated, Act No. 100 of 1922, as amended, states, in Section 20, amended Act No. 507 of 1948, that: "* * * All contracts for new buildings, and improvements costing more than one thousand ($1,000.00) dollars, shall be let to the lowest bidder, the board reserving the right to reject any and all bids."
Plaintiffs contend that this clause requires that all improvements and additions costing more than $1,000.00 must be let to *434 the lowest bidder. They claim that the title to that act is sufficiently broad to support the construction they would put on the clause. On this particular point we do not consider it necessary to comment, because other factors would prevent the interpretation sought by the plaintiffs.
Plaintiffs argue that because the phrase "improvements costing more than one thousand dollars" is set off by itself, separated from the first phrase by a comma, the result is that all improvements costing more than $1,000.00 must be let to the lowest bidder whether the School Board decides to do the work by contract or not, and that all contracts for new buildings whether they cost more or less than $1,000.00 must be let to the lowest bidder. This interpretation of the clause would result in the anomalous position of allowing the Board to erect new buildings itself, if it chose to do so and regardless of the cost, so long as no contract was awarded, while all improvements costing over $1,000.00 would have to be done by contract awarded to the lowest bidder. In other words, the Board could erect new buildings itself but could not make improvements except where the cost remained under $1,000.00; as to new buildings the Board could choose whether to supervise the work itself or whether to let it out under contract, but as to improvements and enlargements it would have no choice but to let the work out under contract. Such an interpretation is untenable and, we have no hesitancy in saying, was certainly never intended by the legislature.
Assuming that the quoted clause is valid (and its constitutionality has not been attacked in this proceeding), we feel that the phrase "and improvements costing more than one thousand dollars" relates back to the subject "contracts", and that the correct and only logical interpretation of the clause is that when contracts are to be let they shall be awarded to the lowest bidder, and this applies to both new buildings and improvements costing more than $1,000.00. This position follows and is fortified by the common rule of construction that requires a reasonable rather than an absurd interpretation to the act in question.
We might point out that neither the title nor any other part of Act No. 100 of 1922, the General School Law, indicates any intent on the part of the legislature to require school boards to let out all jobs for buildings and improvements on the basis of the lowest bid; there is nothing in the act that attempts to prevent any school board from personally handling some of its own construction if it sees fit to do so.
Several opinions from the office of the Attorney General were quoted in plaintiffs' brief which reflect a belief that Act No. 73 of 1926, as amended, would keep a school board or other public body from handling any public work, the cost of which exceeded $500.00, except by advertising and awarding a contract to the lowest responsible bidder. It is not necessary, of course, to say that such opinions have no judicial significance. At any rate, it is worth noting that each of those opinions was rendered prior to the Supreme Court's decision in the Conley case, supra. It suffices, now, to say that the Supreme Court showed in the Conley case that the legislature did not enact in that law such prohibitory requirements as plaintiffs seek to burden the defendant with.
It is our opinion that the defendant School Board has not been violating any statutory law in its method of obtaining additions and improvements to the school buildings within its jurisdiction, by having its own employees do the work thereon.
For these reasons the judgment of the District Court is affirmed.