306 So.2d 823 (1975)
Upton W. GILES, III, and Stephen Schiff
v.
NEW ORLEANS CITY PARK IMPROVEMENT ASSOCIATION.
No. 6379.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1975.
Rehearings Denied February 13, 1975.
Writ Refused April 18, 1975.
*824 Fred P. Westenberger, New Orleans, for plaintiffs-appellants.
Duke & Porterie, Louis B. Porterie, W. Eric Lundin, III, New Orleans, for defendant-appellee.
Philip C. Ciaccio, Joseph M. Perry, Jr., New Orleans, for intervenor-appellee.
Before SAMUEL and LEMMON, JJ., and MARCEL, J. Pro Tem.
MARCEL, Judge Pro Tem.
Plaintiffs instituted this suit to be afforded the opportunity to bid at public auction for the tennis concession located in the City Park Wisner Tennis Building in the City of New Orleans. Plaintiffs originally named as defendant the New Orleans City Park Improvement Association. The operator of the tennis concession, Alvis F. Pendergrass, filed an intervention in the suit and was properly included as a party defendant. After a trial on the merits, the trial judge rendered judgment in favor of the defendants, denying plaintiffs the relief they sought. Plaintiffs appeal that decision to this court.
On a finding that the judgment below is incorrect, we reverse.
The facts of this case are undisputed and amply stated in the trial court's written reasons for judgment.
"* * *
"The matter being contested is a lease to Pendergrass of an area consisting of two portions of floor space, both located in the Wisner Tennis Building. The entire building, however, is not, and never was, under lease to Pendergrass, only certain areas therein. The first portion was the area leased to Pendergrass following proper advertisement and public bid, and is as described in plaintiffs' Exhibit A, which is a copy of Pendergrass's original lease. This area we will hereafter refer to as `Portion A'.

*825 "Plaintiffs have no quarrel with this lease. At the time of execution, it complied with all legal requirements, and was preceded by proper advertisement and public bidding.
"The second portion is an area which was created by permanent additions made to the Wisner Tennis Building some time after the lease referred to as Exhibit A was in effect. Actually, there were two identical extensions or wings added to the Wisner Tennis Building, one on each side, and at the same time. Only one of these wings, the one adjoining Portion A previously referred to, was thereafter leased to Pendergrass in an extended and amended lease (a copy of which is presented in plaintiffs' Exhibit B), which included not only an extension of the original lease on the portion we have been referring to as Portion A, but in addition, a lease on this new wing, which we will refer to as `Portion B'. It is this extended and amended lease about which plaintiffs are complaining. Plaintiffs' complaints are twofold: First, that it extends the period of the original lease, which lease resulted from proper advertisement and public bidding, even beyond the renewal option in said lease, which normally would have expired under its terms on December 31st, 1973; Secondly, that it adds an additional area, Portion B (which is an entirely new area, even though adjacent to Portion A, and which was not even in existence when the lease for Portion A was originally granted).
"* * *."
LSA-R.S. 41:1214 outlines the proper advertisement and public bidding requirements for leasing public lands.
The statute reads as follows:
"If the lessor determines that lands in question may be leased, the lessor shall publish an advertisement in the official journal of the parish where the land is located setting forth a description of the land to be leased, the time when bids therefor will be received, and a short summary of the terms and conditions and purposes of the lease to be executed; provided that if the lands are situated in two or more parishes the advertisement shall appear in the official journals of all parishes in which the lands are located. The advertisement shall be published for a period of not less than fifteen days and at least once a week during three consecutive weeks. The lessor may also send notices to those whom it may think would be interested in submitting bids for the leases.
"The lessor may on its own initiative advertise for bids for any lease as provided herein, but without application therefor. The applications and bids provided for in this part shall be secret, sealed applications and bids and shall be forwarded through the United States mail to the lessor at its domiciled address.
"The advertisements in accordance with this section shall constitute judicial advertisements and legal notices within the contemplation of Chapter 5 of Title 43 of the Louisiana Revised Statutes of 1950."
All parties agree that these requirements were satisfied for the original lease but the defendants admit that there was no advertisement and public bidding in connection with the extended and amended lease. They contend, however, that there was no necessity for such compliance by virtue of the exception provided by LSA-R.S. 41:1217:
"A. All leases executed under the provisions of this part shall be for period not exceeding ten years and shall provided for an annual rental of not less than one dollar per acre, which shall be payable in cash annually and in advance; provided, however, that any person who leases such land and who, within the ten year term of the lease, or any person who holds a ten year *826 lease in full force as of the date of passage of this Act, adds or contracts for permanent improvements to be constructed or placed on or made to the land in the amount of not less than two thousand dollars may, upon written notification to the lessor and upon a proper showing that such improvements have in fact been made or contracted for, lease such lands for an additional period of not more than ten years, the payment of rentals therefor to be made as hereinabove stated. However, if the lease provides for the addition or construction of improvements on or to the land to a value in excess of one hundred thousand dollars and that such improvements, at the termination of the lease, will become the property of the lessor, without any cost to the lessor, then the lessor may grant an option to the lessee to extend the primary term of the lease for an additional ten-year period, or part thereof, for each one hundred thousand dollars worth of improvements or additions made on or to the land, for not to exceed a maximum term of sixty years."
The defendants contend that the amended and extended lease was in fact a contract for the addition of improvements to the leased premises within the meaning of R.S. 41:1217 and that the increased rent agreed to in the new lease would more than pay for the full cost of the improvements within a five year period. This was far in excess of the minimum of $2,000 specified in Section 1217.
Plaintiffs argue that the defendants have not met the requirements of Section 1217 and that the advertisement and public bidding requirements of Section 1211 et seq., particularly Section 1214 therefore apply.
We find that the plaintiffs' interpretation of the law is the correct one. The language of Section 1217 is clear and unambiguous. The intent of the section is to give the lessee of the public land the right to renew without the necessity of public bidding competitively with other prospective competitors. This opportunity is granted him, if he, the lessee, "* * * adds or contracts for permanent improvements to be constructed or placed on or made to the land in the amount of not less than two thousand dollars * * *." In the instant case the lessor and not the lessee made the permanent improvements to the building. The defendants clearly do not satisfy the requirements of the exception in Section 1217 and must conform with the advertisement and public bidding requirements of Section 1211 et seq.
LSA-R.S. 38:2211 et seq. pertains to the requirements for advertisement and public bidding on public works where the work exceeds $2,500 including both labor and materials. Courts of this state have held that when these requirements are not followed the contract is in violation of the statute and void. See: Corbello v. Jefferson Davis Parish Police Jury, La.App., 262 So.2d 151 (1972); Fisher v. State through the Department of Labor, La.App., 265 So.2d 817 (1972); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943). While there are no cases like the ones cited above dealing with the leasing of public lands, we feel that the underlying purpose of both series of statutes are the same. They provide for competitive bidding on state contracts to avoid the possibility of favoritism among interested parties and to assure the best service for the public.
While the record in the present case indicates defendants acted in utmost good faith and exercised sound business judgment, a public agency must nevertheless comply with the public bidding law. We therefore hold that the failure to comply with the public advertising and bidding requirements of LSA-R.S. 41:1211 et seq. results in a contract that is void and of no effect.
*827 For the foregoing reasons, the judgment of the trial court is reversed and the defendant, New Orleans City Park Improvement Association is ordered to advertise and receive public bids for the operation of the tennis concession in the City Park Wisner Tennis Building.
Reversed.